[No. B002776. Second Dist., Div. Three. Aug. 27, 1985.]

In re the Marriage of TEDDY and BENJAMIN S.
BENJAMIN S., Respondent, v.
TEDDY S., Appellant.

**COUNSEL**

Richard M. Shack and James R. Goff for Appellant.

Ron Bain for Respondent.

**OPINION**

**LUI, J.**—This appeal concerns the trial court's order of January 14, 1983, modifying custody and visitation respecting the minor children of appellant Teddy S. (wife) and respondent Benjamin S. (husband). The challenged order modified the previously entered interlocutory judgment and granted husband custody of both children. Because the trial court failed to issue a statement of decision as requested by wife, we remand.[1]

PROCEDURAL AND FACTUAL BACKGROUND

The parties were married in 1975 and separated on May 15, 1979. Two children, Christopher and Stephanie, were born of the marriage. In February 1981, wife and Daniel E. (Daniel) began living together in wife's home.

After a contested hearing, the trial court entered an interlocutory judgment of dissolution of marriage on May 4, 1981.[2] The primary disputed issue concerned the custody of the minor children; each party sought sole custody of both children. Wife was awarded custody of Christopher, then age five; husband was awarded custody of Stephanie, then age three and one-half.

---

[1]Appellant's notice of appeal is from the entire order of January 14, 1983. Since appellant's briefs on appeal challenge only the change of custody of the minor Christopher (and by implication the visitation orders regarding Christopher) and do not deal with portions of the order dealing with counseling and prohibiting contact between the children and Daniel E., we deem those portions of the appeal not addressed in the briefs to have been abandoned.

[2]Pursuant to rule 12(a) of the California Rules of Court, we have made the entire superior court file a part of the record on appeal.

A final judgment of dissolution was entered on July 10, 1981.

During the summer of 1981, both husband and the children's grandmother, Herminia S. (Herminia), noticed unusual changes in the children's behavior. The children demonstrated a new interest in sexual contact with each other; Stephanie exhibited masturbation behavior; and Christopher's language became increasingly profane. Stephanie also expressed a fear of returning to wife's home and said that Daniel hurt her when he touched her vaginal area.

On November 18, 1981, husband and Herminia noticed contusions on Christopher's buttocks. They made a report to the Los Angeles County Child Abuse Services and the Inglewood Police Department. Photographs were taken of Christopher; these photographs were later entered into evidence at a hearing conducted on April 19, 1982.

On November 24, 1981, husband took Stephanie to Harbor General Hospital for an examination because he suspected that Stephanie had been sexually molested by Daniel. Based on this suspicion, husband withheld wife's visitation with Stephanie.

Wife filed an order to show cause seeking sole custody of Stephanie and an order preventing visitation between husband and the children. A hearing was set on the order to show cause for January 29, 1982.

In the interim, Judge Frank Baffa modified the visitation rights of both parties pending the January 29, 1982, hearing. Judge Baffa's interim order provided that wife could only visit Stephanie at husband's parents' home and husband could only visit Christopher at wife's home.

Husband filed a responsive declaration seeking sole custody of Christopher and safeguards concerning wife's visits with the children.

At the hearing on the order to show cause, the trial court ordered that Judge Baffa's interim order of December 15, 1981, be continued. Husband, wife and Daniel agreed to submit to psychiatric examinations. The trial court also ordered psychiatric examinations of the children. A further hearing was scheduled for April 19, 1982.

On April 19, 1982, a four-day hearing commenced before Judge William A. Ross, who conducted all subsequent hearings. The hearing concerned husband's contention that the children were physically and/or sexually abused by Daniel.

Expert and other testimony evidence presented by the parties conflicted as to whether the children had been abused. Testimony received from wife's medical experts regarding the circumstances of the relationship between the children and Daniel differed sharply from the testimony offered by husband's medical experts.

In addition to the extensive testimony and photographic evidence received into evidence, the trial court conducted an *in camera* hearing with the children with the consent of the parties, outside of the presence of the parties and their counsel. Following the *in camera* hearing, the court stated several times on the record that the children's responses to its questions corroborated Dr. Gloria Powell's opinion that the children had been sexually and physically abused. The trial judge also stated that the children told him definitely which way the case should go and that he was convinced the children had been abused. The matter was submitted at the conclusion of the hearing. The trial court denied wife's request for findings of fact.

On May 6, 1982, the trial court issued an intended decision in which it changed the custody of Christopher from wife to husband in accordance with the views stated in its memorandum of decision filed the same date.[3]

---

[3]The memorandum of decision provided:

"The order of May 14, 1981 is modified in the following respects only:

"Custody of Christopher Nolan, born April 28, 1976 is awarded to the petitioner with the right of visitation as heretofore ordered.

"The court makes its decision based on the following facts:

"1. The interview with the children in chambers. Without giving away any confidences of the children, each interviewed separately corraborated [sic] the testimony of Dr. Powell, with reference to sexual abuse of Stephanie. Questions were phrased by the court whereby each child had to give an answer to a question or demonstrate by gestures what he or she had observed or witnessed.

"2. The questioning of Christopher and Stephanie corroborated the physical abuse of Christopher at the hands of respondent's 'financee' [sic].

"3. The court witnessed an unruliness on the part of Christopher, because of crisp and curt answers to questions. For instance, he said when asked, 'Have you been a good boy?' answered, 'No' in a challenging tone, which corroborates the paternal grandmother's (Ms. S[.]'s) testimony with reference to Christopher's language and demeanor.

"Both parties are restrained from allowing either of the children to be in the presence of Dan E[.], without a modifying order signed by a judge. The visitation privileges of respondent shall be exercised away from the Dan E[.] residence.

"The petitioner is warned that the court is not entirely satisfied with his conduct and it is believed that he is, to some extent, being motivated by his dislike for his former wife. He appears to be seeking revenge and is therefore ordered to continue counseling to assist in keeping his problems under control. He is further ordered to cease harassment of respondent by photographing her.

"The court otherwise finds the respondent's [sic] mother to be a fit and proper person to have custody of her children."

On May 14, 1982, wife filed a formal request for findings of fact and conclusions of law pursuant to Code of Civil Procedure section 632[4] and rule 232(b) of the California Rules of Court.

On June 2, 1982, the trial court stayed its order awarding custody of Christopher to husband based on the representation that Daniel had moved out of the wife's home and was no longer living with her. The stay order allowed wife to retain custody of Christopher until November 2, on the condition that neither of the children was to be in Daniel's presence at anytime. Wife was further ordered to take Christopher for psychiatric counseling with Dr. Powell. A further hearing was set for November 2, 1982.

On June 15, 1982, wife filed a request for statement of decision on controverted issues pursuant to section 632. The November 2 hearing was continued to January 13, 1983.

On January 13 and 14, 1983, the trial court conducted further hearings to consider whether the stay should be vacated. At the conclusion of the hearings, the trial court vacated the stay order of June 2, 1982, and awarded custody of Christopher to husband. Wife was permitted visitation with both children, out of Daniel's presence.

Wife again requested a statement of decision. The trial court directed husband's counsel to prepare and submit a proposed statement of decision and a proposed formal order of modification. A formal order of modification was filed on January 14, 1983. No statement of decision was ever filed.

## CONTENTIONS ON APPEAL

Wife contends that:

1. She was denied a fair hearing and her right to an effective appeal was impaired by the trial court's *in camera* interview with the children;

2. The modification of the interlocutory judgment without a statement of decision is void; and

3. The trial court erred in admitting an expert's answer to a hypothetical question which assumed wife had knowledge of the alleged abuse.

---

[4]Hereinafter, all references shall be to the Code of Civil Procedure unless otherwise indicated.

DISCUSSION

I

*Appellant Was Not Denied a Fair Hearing Nor Was Her Right to an Effective Appeal Impaired Because of the Trial Court's Interview of the Children in Chambers*

█ Wife first contends that the trial court's *in camera* interview with the children outside of her presence and the presence of her attorney violated her constitutional rights to due process, cross-examination and an effective appeal. We find her contentions to be without merit.

The record clearly reflects that appellant consented to the trial court's *in camera* interview of the children out of the presence of the parties and counsel. Furthermore, the record lacks any indication that the wife ever objected to this interview.

It is a well-recognized proposition that "[a] person is free to waive any or all procedures required and designed to safeguard fundamental rights" and that a person may waive the right of cross-examination. (See *Ohmer* v. *Superior Court* (1983) 148 Cal.App.3d 661, 669 [196 Cal.Rptr. 221].) Such waiver may be express, i.e., by stipulation of the parties, or implied. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 271-272, pp. 4260-4261.) █ It is also a fundamental principle of appellate review that objections must be raised in the trial court to preserve questions for review. Appellate courts will not consider objections that were not presented to the trial court. (*Russell* v. *Geis* (1967) 251 Cal.App.2d 560, 569-570 [59 Cal.Rptr. 569].) █ In civil cases, constitutional questions not raised in the trial court are considered waived. (*Geftakys* v. *State Personnel Board* (1982) 138 Cal.App.3d 844, 864 [188 Cal.Rptr. 305].)

█ The doctrine of invited error operates along with the principle of waiver to estop a party from asserting on appeal those errors which that party was responsible for inducing below. Thus, if a party offers inadmissible evidence, the party cannot complain of its admission. (*In re Marriage of Hewitson* (1983) 142 Cal.App.3d 874, 888 [191 Cal.Rptr. 392].)

█ In the present appeal, there was no objection by wife when husband's counsel suggested the *in camera* interview.[5]

---

[5]The record reflects the following colloquy with the court:
"MR. BAIN [wife's attorney]: Could I ask the Court to ask Mrs. S[.] to bring in Chris-

Wife's reliance on *Smith* v. *Smith* (1955) 137 Cal.App.2d 512 [290 P.2d 609] is misplaced. In *Smith*, the trial judge talked to a child in chambers with the stipulation of the parties. The trial judge did not state for the record what occurred during the conversation. Although the appellate court in *Smith* disapproved of the practice, it affirmed because no request was ever made that the trial judge make a record of the interview with the child.

In the instant case, the trial court stated on the record and in its memorandum of decision the essential contents of the *in camera* interview with the children. The trial court also declared several times that the children's answers to his questions corroborated Dr. Powell's opinion of abuse. The wife's contention that she did not know what testimony to rebut is belied by the record.

II

*The Trial Court's Modification of the Interlocutory Judgment Without a Statement of Decision Is Void*

■ Wife's second contention is that the trial court's failure to make a statement of decision renders the modification of the interlocutory judgment void. We agree.

Section 632 expressly mandates that the trial court shall issue a statement of decision when a request is timely made.[6]

---

topher tomorrow?

"THE COURT: All right.

"MR. CLOSE [husband's attorney]: I would like Stephanie to come in then, too, if that is all right with the court.

"THE COURT: I'm wondering what you are going to do with young children like that. One is six and one—

"MRS. S[.]: Christopher is five. He has been through a lot. I don't think he should be subject to any more.

"MR. CLOSE: If we are going to bring the children, I think the court should talk to them in chambers.

"MR. BAIN: We have arrangements made so they could be brought in fairly easy.

"THE COURT: Did I talk to them before?

"MR. CLOSE: No.

"MR. BAIN: No, you haven't.

"THE COURT: All right. Bring them in. Bring in both of them."

[6]Section 632 was amended in 1981 and provides as follows: "In superior, municipal, and justice courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. *Upon the request of any party appearing at the trial, made within 10 days after the court announces a tentative decision,* or if the trial has lasted less than one day, made prior to submission of the matter for decision, *the court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial.* The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of

Rule 232 of the California Rules of Court specifies the procedure and time limits for requesting findings, submitting proposed findings, making objections and counterfindings, preparing the written judgment and granting extensions of time for compliance with the rule. Rule 232 is made applicable to family law matters by rule 1206.

As stated in *In re Marriage of Davis* (1983) 141 Cal.App.3d 71, 74-75 [190 Cal.Rptr. 104], " '[t]he code provision requiring written findings of fact is for the benefit of the court and the parties. To the court it gives an opportunity to place upon record, in definite written form, its view of the facts and the law of the case, and to make the case easily reviewable on appeal by exhibiting the exact grounds upon which the judgment rests. To the parties, it furnishes the means, in many instances, of having their cause reviewed without great expense. . . .' [Citations.]"

Traditionally, litigants have not been entitled to findings of fact and conclusions of law (the predecessor to a statement of decision) on an order made after a motion. (*In re Marriage of Russo* (1971) 21 Cal.App.3d 72, 76-77, fn. 2 [98 Cal.Rptr. 501].) That general rule was examined in *In re Rose G.* (1976) 57 Cal.App.3d 406, 418 [129 Cal.Rptr. 338], in connection with proceedings to terminate parental rights under Civil Code section 232. In *Rose G.*, the appellate court determined that "the traditional distinction between 'special proceedings' and 'general proceedings' insofar as the applicability of Code of Civil Procedure section 632 is concerned . . . must give way to a criterion of the importance of the issues of fact to be determined." The court then held that where the issues are sufficiently important, as in a child custody case, formal findings of fact and conclusions of law are required upon the request of a party, regardless of the nature of the proceedings. (*Id.*, at p. 418.)

The reasoning of the appellate court in *Miramar Hotel Corp.* v. *Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126 [210 Cal.Rptr. 114] is in point and persuasive on the issue before us. The court in *Miramar Hotel* held specifically that it is reversible per se if the trial court fails to prepare a statement of decision under section 632 if a timely request is made by a party. (*Id.*, at p. 1128.) The court reasoned: "The Legislature, by its enactment of section 632, and the Judicial Council, by its adoption of California Rules of Court, rule 232 [fn. omitted] (hereinafter rule 232), have created a comprehensive method for informing the parties and ultimately

decision. After a party has requested such a statement, any party may make proposals as to the content of the statement of decision. [¶] The statement of decision shall be in writing, unless the parties appearing at trial agree otherwise; however, when the trial has been completed within one day, the statement of decision may be made orally on the record in the presence of the parties." (Stats. 1981, ch. 900, § 1, p. 3425, italics added.)

the appellate courts of the factual and legal basis for the trial court's decision.

"A statement of decision prepared in conformity to the established procedure may be vitally important to the litigants in framing the issues, if any, that need to be considered or reviewed on appeal. Parenthetically, such a statement may render obvious the futility of an appeal. Eventually, a careful issue identification and delineation may also be of considerable assistance to the appellate court.

"Another equally important aspect of the orderly procedure ordained for eliciting and originating a statement of decision is the parties' opportunity to make proposals as to its content. . . .

". . . . . . . . . . . . . . . . . . . . . .

"Section 632 clearly specifies that the issuance of a statement of decision upon timely request therefor is mandatory. Because the trial court failed to issue such a statement despite a timely request therefor, reversal is required.

"We impose no substantial burden upon trial courts by insisting upon adherence to the legislative mandate as explicated by rule 232. The trial court is specifically authorized to designate a party to prepare the statement of decision (rules 232(a) and 232(c)) and thus is required only to review the statement and any objections thereto and to make or order to be made any corrections, additions, or deletions it deems necessary or appropriate.

"Were we, conversely, to condone a total or even a material failure by trial courts to observe the prescribed procedure for revealing the basis for their respective decisions, we would be thrusting a quite substantial burden upon the litigants and also upon the appellate courts. At the outset of virtually every appeal of such a case, there would emerge a threshold question as to precisely what were the 'principal controverted issues at trial.' It is ineluctable that such a classification could most easily be made by the trial judge. More importantly, where a request for a statement of decision has been made and an inadequate statement or no statement whatsoever has been provided, then each appeal is inevitably based upon what is tantamount to a claim that the judgment is not supported by substantial evidence. This in turn requires both the litigants and the appellate court to conduct an examination of the entire record in order to properly review the trial court decision.

"It thus becomes apparent that the legislative provision of section 632 as augmented by rule 232 is the most efficient and judicially economic manner of fulfiling the trial court function." (*Id.*, at pp. 1128-1130.)

Both husband and wife rely on *In re Marriage of Wood* (1983) 141 Cal.App.3d 671 [190 Cal.Rptr. 469], which involved a custody dispute between two natural parents. Wife contends that a statement of decision is necessary here because there is no record of the trial court's interview with the children in chambers. Husband argues that a statement of decision is not necessary because the basis for the trial court's decision to award custody of Christopher to him is clearly set forth in the record.

The court in *Wood* stated: "In the present case, . . . the importance of the issue and the magnitude of potential adverse effects are great. However, such custody orders remain subject to modification. The standards governing the award of the custody of minor children, while permitting the trial court wide discretion, are explicitly set forth in Civil Code section 4600. There being a transcribed record of the hearings, meaningful appellate review in the present case is possible in the absence of express findings. [Fn. omitted.] It would serve no useful purpose to reverse the trial court simply because it did not reiterate in writing its oral findings." (*Id.*, at p. 680.)

*Wood* dealt with a trial court's modification of custody of the children from the mother's sole custody to joint custody and changed physical custody of the minors to the father. *Wood* interpreted the provisions of Civil Code section 4600.5 dealing with joint custody orders and any modification thereof.

At the time *Wood* was decided in 1983, Civil Code section 4600.5, subdivision (a), provided in pertinent part as follows: "If the court *declines* to enter an order awarding joint custody pursuant to this subdivision, the court shall state in its decision the reasons for denial of an award of joint custody." (Italics added.) Subsequent to the decision in *Wood*, this just-quoted portion of Civil Code section 4600.5, subdivision (a), was deleted and a new subdivision (c) was added to the section, effective January 1, 1984. Civil Code section 4600.5, subdivision (c), now reads: "Whenever a request for joint custody is *granted or denied*, the court, upon the request of any party, shall state in its decision the reasons for granting or denying the request. A statement that joint physical custody is, or is not, in the best interests of the child shall not be sufficient to meet the requirements of this subdivision." (Italics added.)

The reasoning of *Wood*, however, is distinguishable from the case at bench because *Wood* dealt with the necessity of specific findings under former Civil Code section 4600.5, subdivision (a), when the change in custody involved a *grant* of joint custody as contrasted with a *denial* of joint custody. Furthermore, the reasoning of *Wood* on this point is now questionable in

view of the subsequent enactment of section 4600.5, subdivision (c), and the modification of subdivision (a).

We adopt the reasoning of *Miramar Hotel* and reject the reasoning of *Wood.* Since the trial court in the present appeal failed to file a statement of decision when a timely request was made, we partially reverse the order insofar as it deals with the modification of the custody of Christopher.

### III

*The Trial Court Did Not Err in Admitting an Expert Witness's Answer to a Hypothetical Question*

■ Wife's third contention is that the trial court erred in admitting Dr. Michal Maloney's answer to a hypothetical question based on wife's assumed knowledge of the abuse of either child. We disagree.

A trial court has great discretion relating to the form of a hypothetical question. (*Guardianship of Jacobson* (1947) 30 Cal.2d 312, 324 [182 P.2d 537].) The question, however, must find its basis in fact and may be framed upon any theory or reasonable inference supported by the evidence, subject to the limitation that it shall not be unfair or misleading. (See generally, *Rosenberg* v. *Goldstein* (1966) 247 Cal.App.2d 25, 31 [55 Cal.Rptr. 306].) The facts assumed need not be undisputed. (*Guardianship of Jacobson, supra,* at p. 324.)

In the present appeal, the wife's expert, Dr. Maloney, was asked a hypothetical question regarding his custody recommendation, assuming wife knew of the abuse of either child. Wife's counsel objected on the grounds that the hypothetical question assumed facts not based on evidence in the record. The court overruled the objection stating that it was a "fair view of the evidence."

The testimony in this case regarding wife's knowledge of the abuse of the children was disputed. The record, however, contains ample evidence to base such a hypothetical question. For example, husband's expert, Dr. Powell, testified that during one of her interviews with Stephanie, Stephanie said she told wife that Dan was sexually abusing her. Husband also testified he warned wife of the abuse of the children.

Furthermore, the disputed question was posed on cross-examination and wide latitude is given a party when cross-examining an expert witness. (*Dincau* v. *Tamayose* (1982) 131 Cal.App.3d 780, 798-799 [182 Cal.Rptr. 855].)

In our view, the hypothetical question was neither unfair nor misleading. The trial court properly overruled wife's objection to the hypothetical question.

## IV

*Frivolous Appeal*

Based upon our examination of the record and in light of our decision to remand the case to the trial court for a statement of decision, we reject husband's contention that wife's appeal is frivolous and deny his request for sanctions. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179].)

## DISPOSITION

The order appealed from is reversed insofar as it awards custody of Christopher to husband. The matter is remanded to the superior court with directions for it to prepare a statement of decision in accordance with the views expressed herein.

Klein, P. J., and Danielson, J., concurred.

A petition for a rehearing was denied September 25, 1985, and respondent's petition for review by the Supreme Court was denied November 27, 1985.