[No. A047353. First Dist., Div Four. Sept. 13, 1990.]

In re RODRIGO S., a Minor.
SAN FRANCISCO DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
JOAN R. et al., Objectors and Appellants.

**COUNSEL**

Howard J. Specter, under appointment by the Court of Appeal, and Jack Walker for Objectors and Appellants.

Louise H. Renne, City Attorney, and Julia Ten Eyck, Deputy City Attorney, for Plaintiff and Respondent.

## OPINION

**POCHÉ, J.**—Parents, Joan R. and David S., appeal from a judgment terminating their parental rights in their minor son, Rodrigo S., under Civil Code section 232, subdivision (a)(7).[1]

Both parents contend on appeal there is no substantial evidence to support the court's finding that a return of the minor to parental custody would be detrimental to him. We agree that as to the father the finding of detriment cannot be maintained which compels reversal of the judgment as to his parental rights. Joan R. also contends that the trial court failed to consider less drastic alternatives to termination of her rights,[2] and erred by adopting a statement of decision prepared by the department of social services. We affirm the judgment as to her.

Rodrigo or Roderick S. was born prematurely in a hotel room on April 15, 1983. His mother had not received any prenatal care and her son's low birth weight, and other physical difficulties required his hospitalization for a month after his birth. In May of 1986 he was declared a dependent child. (Welf. & Inst. Code, § 300, subd. (a).) In September of that year he was placed in the home of Sharon Gutierrez in whose foster care he has remained ever since.

The child was taken into custody after an incident on March 19, 1986, in which police were summoned to his home in response to a domestic violence call made by a neighbor. When the boy was examined at the hospital he was found to have some fresh and some healing bruises, scrapes and two hematomas on his scalp all of which, by his mother's account, were the result of beatings inflicted by his father.

Joan R. is a victim of Huntington's chorea, a progressive and eventually fatal neurological condition in which the cerebral cortex degenerates. The effects of her disease make it difficult for her to walk and move about, and indeed to speak easily. As the disease progresses her memory and judgment will become further impaired, which will affect her capacity to parent. Although she is able to do shopping and household chores, David S. cares for her and their household by helping her bathe, dress and prepare meals. During visits Rodrigo and his mother watch television together and make occasional visits to a park.

---

[1] Unless otherwise indicated, all further statutory references are to the Civil Code.

[2] Although this argument is raised by David S. we need not reach it in light of our disposition as to him. Joan R. incorporates this portion of father's brief into her opening brief (Cal. Rules of Court, rule 13) and in light of our holding we do reach this issue as to her appeal.

### Mother's Appeal

■ Joan R. contends that the judgment must be reversed because the court erred in not formally announcing a statement of decision. At the end of the hearing counsel for Joan R. orally requested a statement of decision. The court permitted the oral request, but asked all parties to submit proposed statements. By an order of August 10 the court adopted as its tentative decision that submitted by petitioner and gave the parties 15 days "to file and serve objections to the proposed statement under Rules of Court 232(d)." On August 25 the trial judge signed the judgment. Mother contends that because the trial court did not file a document labeled "statement of decision" it failed to comply with the requirements of Code of Civil Procedure section 632, and that the error is reversible per se.

A statement of decision must explain the factual and legal basis for the court's decision. (Code Civ. Proc., § 632.) California Rules of Court, rule 232 permits the procedure employed here, namely the trial court may allow any party affected by a proposed statement of decision 15 days in which to object to it. (Cal. Rules of Court, rule 232(d).) There is nothing in the record before us indicating that counsel for either parent or for Rodrigo objected to the court's proposed statement of decision which was served on all parties.

Joan R. argues on appeal that the tentative decision to which she made no objection below did not become the court's final statement of decision by operation of law, but instead must be judged a nullity. The authority she cites for this proposition is inapposite. The cases either involve situations in which the court ignored a timely request for a statement of decision (*Miramar Hotel Corp.* v. *Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1129 [210 Cal.Rptr. 114] [relabeled minute order which fell short of explaining factual and legal basis for decision]; *In re Marriage of S.* (1985) 171 Cal.App.3d 738, 744, 750 [217 Cal.Rptr. 561]) or a party who failed to request a statement of decision then sought on appeal to establish error by reference to a tentative decision (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 646-647 [253 Cal.Rptr. 770]).

If there was any error here it consisted solely in the trial court's failure to expressly state that absent modification its proposed statement of decision would become final once the period for objection had lapsed. That was clearly the intent of the court.

### Mother and Father's Appeal

■ Each parent contends that there is no substantial evidence to support the finding that it would be detrimental to return the minor to his/her

custody. Rodrigo was freed from parental custody and control under section 232, subdivision (a)(7), which applies to children who have been placed out of the home for a period of one year. ■■■ Termination of parental rights under that subdivision requires the court to find that "return of the child to the child's parent or parents would be detrimental to the child and that the parent or parents have failed during that period, and are likely to fail in the future, to maintain an adequate parental relationship with the child, which includes providing both a home and care and control for the child . . . . [¶] The court shall make a determination that reasonable services have been provided or offered to the parents which were designed to aid the parents to overcome the problems which led to the deprivation or continued loss of custody and that despite the availability of these services, return of the child to the parents would be detrimental to the child." (§ 232, subd. (a)(7).)

■■■ This case presents the troubling question of whether detriment to the child can consist solely of the potential loss of a foster parent to whom the child has developed strong emotional bonds.

In this case that loss represents a very real deprivation. Rodrigo's foster mother wanted to adopt him, but she had announced that should she be unable to do so, she could no longer keep him as a foster child. For her the foster care arrangement had become extremely stressful. There was ample evidence before the court that Rodrigo had developed a strong emotional bond with Ms. Gutierrez, that he had flourished in her care, and that when asked with whom he wished to live, he named her and his natural father.[3] In short, at the time of the termination proceeding if parental rights were not terminated, there was a strong likelihood that Rodrigo would lose the foster mother who had cared for him some two years and ten months, or for nearly as long as he had spent in the care of his natural parents.[4]

■■■ Although we are unaware of case law defining "detriment" within the meaning of section 232, subdivision (a)(7), a detriment finding is also

---

[3] Ms. Gutierrez is a single mother who has adopted two other children and is a foster parent to three children including Rodrigo.

It is a tribute to her sensitivity that Ms. Gutierrez appreciates the importance of the child's love for his natural father and believes it would be in the boy's best interests to have contact with his father as he grows up.

[4] The court-appointed psychologist who evaluated both parents and Rodrigo characterized the dilemma as follows: "But most importantly, Roderigo [sic] has fared well in his foster home and has begun to form attachments there. I do not believe that Mr. [S.] can match what presently is being provided his son. My recommendation, then, is that Roderigo [sic] continue to reside in the home of Sharon Gutierrez. If that placement requires a termination of parental rights in order to be effective, then the court may have to take this step."

When the same psychologist was cross-examined he was asked if he was "putting a premium on the child staying in the foster home?" To which he answered, "Yes, I am."

required under section 4600[5] and in that context the word has been defined. Our Supreme Court has held that the detriment requirement of that section requires a finding that placement away from the parent "is essential to avert harm to the child." (*In re B. G.* (1974) 11 Cal.3d 679, 699 [114 Cal.Rptr. 444, 523 P.2d 244]; *In re Carmaleta B.* (1978) 21 Cal.3d 482, 495-496 [146 Cal.Rptr. 623, 579 P.2d 514].) Both section 4600 and section 232, subdivision (a)(7) couple the finding of detriment with a best-interests-of-the-child test. (§ 232, subd. (b).)

 A finding of detriment, however, cannot depend solely on the potential loss of attachment to foster parents otherwise "in the case of a very young child . . . the court would merely pay lip service to the concept of parenting as a fundamental constitutional right." (*In re Venita L.* (1987) 191 Cal.App.3d 1229, 1240 [236 Cal.Rptr. 859] [detriment requirement of Welf. & Inst. Code, § 366.2, subd. (e)].) Strong attachment to foster parents who may be the only family a very young child has effectively ever known may be one element in the detriment determination. (*In re Baby Girl M.* (1984) 37 Cal.3d 65, 83 [207 Cal.Rptr. 309, 688 P.2d 918] [dis. opn. of Mosk, J.).)

Unlike cases, however, where the child has spent virtually its entire life in a foster family with little or no contact with its natural parents (see *In re Emily L.* (1989) 212 Cal.App.3d 734, 742 [260 Cal.Rptr. 810]; *In re B. J. B.* (1986) 185 Cal.App.3d 1201, 1204, 1208 [230 Cal.Rptr. 332]), Rodrigo not only came into foster care as a toddler, but since then has had a continuing relationship with his natural parents. There was undisputed evidence that he is psychologically connected with his natural father. The evidence must support the finding that termination of parental rights is essential to avert harm to Rodrigo. This it does not do.

Under the reunification plan both parents were required to participate in individual and family counseling, attend parenting education, visit with Rodrigo, and maintain contact with the case worker. The father was also required to participate in a family violence treatment program and in an alcohol treatment program. The only additional requirement imposed upon the mother was that she continue to obtain treatment for her medical condition.

While the probation officer conceded that David S. had complied with his reunification requirements, the social worker in charge of the case testified that the father had not done so "successfully." She noted that although

---

[5] "Before the court makes any order awarding custody to a person or persons other than a parent, without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best-interests-of-the-child." (§ 4600, subd. (c).)

David S. had received impulse control therapy, he had subsequently been involved in one altercation on a bus and another on the street. Likewise, she felt he had not renounced his belief in corporal punishment despite parenting training. She conceded that the father had regularly picked Rodrigo up for visits, but complained that he was often late. Finally, she concluded that alcohol was still a problem for the father because, although David S. continued to attend Alcoholics Anonymous, he admitted that he still drinks on occasion.

Her testimony was in conflict with that of Michael Diger, a clinical psychologist, who testified that the father had successfully completed both group therapy for impulse control and individual therapy. In conversations with Diger the father had opined that physical punishment of children was inappropriate. Diger also testified that, although he had worked with alcoholics, he had never identified alcohol as one of the father's problems.

Although Diger had seen Rodrigo only once in the company of his father, the psychologist gave his opinion that the boy would not be at risk of psychological, emotional, or physical injury from his father if he was returned to his father's care. In Diger's opinion the father had learned to handle stress during the three years Rodrigo had been out of the home. This opinion was in contrast to that of the psychologist who evaluated, but did not treat, David S., that results of the Minnesota Multiphasic Personality Inventory suggested that David S. could become aggressive if he was subjected to a significant increase of stress or if he engaged in substance abuse.

■ A finding of detriment to the child must be based on present circumstances rather than on the family situation which existed at the time the child was initially removed from parental custody. (*In re Jack H.* (1980) 106 Cal.App.3d 257, 267 [165 Cal.Rptr. 646]; *In re James M.* (1976) 65 Cal.App.3d 254, 265 [135 Cal.Rptr. 222].) ■ Here there is no substantial evidence other than speculation that the father could, if he abuses alcohol or is subjected to increased stress, pose a physical danger to Rodrigo. There was no evidence of any abuse since the events leading to the boy's removal from parental custody, and in the three years since that time his visits with his parents were day-long and unsupervised.

Rodrigo's own therapist, who had never seen the child in the company of his father, testified that the boy had special, psychological needs which were being met by the foster mother. This therapist predicted that Rodrigo would need years of additional treatment. After evaluating the boy, the court-appointed psychologist concluded that Rodrigo "is a little boy that does not have a very firm identity, who has experienced and continues to experience the detrimental effects of the neglect . . . ." Thus there is

evidence that the child is psychologically fragile. What is lacking is evidence that the boy cannot return to his father without suffering psychological or emotional harm other than that inherent in any move from one home to another.

Absent such evidence the only support for the detriment finding is the loss of a highly successful foster care placement. While we in no way minimize the impact such a loss will be for Rodrigo, we cannot say that such evidence standing alone is sufficient to support a finding of detriment. Accordingly, the judgment must be reversed as to David S.

■ As to the mother there is substantial evidence to support the termination of her parental rights. Although her medical condition is a fact of her life over which she has no control, the impact of that condition has made it very difficult for her to act as a mother to Rodrigo. Her condition apparently made it impossible for her to provide adequate stimulation for the boy when he was an infant, and the ever worsening physical and emotional symptoms of her disease prevent her from taking care of him now. There is substantial evidence to support the finding of detriment were the boy returned to her.

Joan R. also argues that the court erred by failing to consider less drastic alternatives to termination of her rights. (*In re Angelia P.* (1981) 28 Cal.3d 908, 923 [171 Cal.Rptr. 637, 623 P.2d 198].) Here the question of other alternatives was largely foreclosed by the same evidence which supports termination of the mother's parental rights. Because of her medical condition Joan R. is largely dependent upon David S. for her own care. While providing additional social services to her might alleviate that physical dependence, such services could not remedy the impairment of her judgment caused by the disease.

The judgment terminating the parental rights of Joan R. is affirmed.

Anderson, P. J., and Perley, J., concurred.