Filed 1/16/24  Darling v. Darling CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MARNI MARIE DARLING,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHAD STEPHEN DARLING,<br><br>Defendant and Appellant. | 2d Civ. No. B323719<br>(Super. Ct. No. D363893)<br>(Ventura County) |

Chad Darling appeals a trial court order denying his request for a continuance of trial on Marni Darling's petition to dissolve their marriage.[1]  He contends the court deprived him of due process because he was unable to cross-examine Marni's witnesses or object to evidence during trial.  We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Chad and Marni married in 2001.  They had three children together, two of whom are minors.  Throughout the marriage,

---

[1] We refer to Marni and Chad Darling by their first names for clarity and convenience.  No disrespect is intended.

Chad ran a plastering company while Marni cared for their children. Marni contends Chad began abusing drugs in 2011. Marni asserts that in 2013 Chad checked into rehabilitation for the first of what would be six recovery attempts. During that time, the company did not have a bookkeeper so the job "kind of got thrown at [her]." She "took over the business side of . . . all of the office, invoicing estimates, [and] payroll."

Marni petitioned for dissolution of their marriage in 2014. Chad sent her threatening text messages while the matter was pending. One stated: "I'm always up for a good fight you can hire a lawyer you can come after me for anything you want. I'll be sure to dissolve everything and break the bank . . . this thing will be drawn out so long that we will both be long broke by the time either one of us gets a judgment." Marni obtained three temporary restraining orders against Chad. In October of 2021, the court issued a domestic violence restraining order protecting Marni and their children. That order remains in effect until 2026.

The parties attended a trial setting conference on September 13, 2021, at which the trial court set a trial date and issued pretrial orders including that the parties were to exchange exhibit lists, exhibits and witness lists. A week later, Marni's counsel sent Chad a notice of trial setting out the pretrial orders and notifying him of the December 9 trial date. Mark Piesner substituted in as Chad's fourth attorney on December 3. Piesner contacted Marni's counsel two days before trial to request that she stipulate to a continuance because he would be out of town and unable to attend. She declined.

Piesner's office then called the court the morning of trial "seeking a continuance on a representation that Mr. Darling ha[d] tested positive for COVID." The court denied the request and informed them "that Mr. Piesner needed to make an

2

appearance here today." Attorney William Calerno specially appeared for Piesner via Zoom in violation of local rules. (See Super. Ct. Ventura County, Local Rules, rule 7.06.) Calerno advised he was "seeking a trial continuance on Chad and Piesner's behalf" due to Chad's illness and represented that Piesner was "out of town for a previously scheduled travel." The court again denied the request and informed Mr. Calerno that trial would begin at 10:30 a.m. and that an attorney representing Chad would have "to be present in court."

Trial thereafter commenced without Chad or his counsel present. Marni and three other witnesses testified, and Marni admitted 89 exhibits into evidence. The trial began in the morning and after a recess for lunch, concluded that day. The court "closed evidence subject to affording Chad the opportunity to testify and for rebuttal purposes only." The court terminated the parties' marital status and issued a judgment of dissolution for marital status only and reserved all other issues. Trial resumed on March 30. Chad and Piesner appeared. Chad testified and despite being allowed by the court to produce "any documents he wanted to offer into evidence," he offered none.

The court entered a judgment of dissolution on all reserved issues on July 27, 2022. Chad moved to set aside the judgment (Code Civ. Proc., § 473, subd. (b)) on the grounds that he and his counsel were unable to attend trial due to "a perfect storm of unanticipated mistakes, errors, and inadvertencies." He filed a notice of appeal before the court held a hearing on the motion. (Fam. Code, § 2341; Code Civ. Proc., § 904.1, subd. (a)(1).) The court stayed the action pending this appeal. (Code Civ. Proc., § 916, subd. (a).)

3

## DISCUSSION

### *Standard of Review*

"'"'A judgment or order of the lower court is *presumed correct*.'"'" (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 898.) "[T]o be successful on appeal, an appellant must be able to affirmatively demonstrate error on the record before the court." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822 (*Falcone*).) "Reviewing courts must uphold a trial court's choice not to grant a continuance unless the court has abused its discretion in so doing. [Citation.]" (*Ibid*. at p. 823.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.'" (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420.)

### *No Abuse of Discretion in Denying Trial Continuance*

Chad contends the trial court erred in denying his request because the "interests of justice supported a trial continuance." He argues there was good cause for a trial continuance because: (1) Chad could not attend due to his illness; and (2) his counsel was not available due to "Piesner's mis-calendaring of the trial date." He further asserts Marni and her witnesses would not have been prejudiced by a trial continuance. We do not agree with either contention.

"To ensure the prompt disposition of civil cases, the dates assigned for a trial are firm. All parties and their counsel must regard the date set for trial as certain." (Cal. Rules of Court, rule 3.1332(a).) "A party seeking a continuance . . . must make the request . . . by a noticed motion or an ex parte application . . . with supporting declarations. The party must make the motion or application as soon as reasonably practical once the necessity for the continuance is discovered." (*Id*., rule 3.1332(b).) "The court may grant a continuance only on an affirmative showing of good cause" and "must consider all the facts and circumstances

4

that are relevant to the determination." (*Id*., rule 3.1332(c), (d).) Some relevant factors include: "proximity of the trial date"; prior trial delays; "prejudice that parties or witnesses will suffer"; "[w]hether all parties have stipulated to a continuance"; "the interests of justice"; and "[a]ny other fact or circumstance relevant to the fair determination of the motion or application." (*Id*., rule 3.1332(d).) "[S]ickness of a party to an action, preventing his attendance on the court, does not *ipso facto* require the court to grant an application for a continuance." (*Lynch v. Superior Court* (1906) 150 Cal. 123, 123.) Furthermore, a party "d[oes] not have an absolute right to a continuance because of the absence of [their] attorney." (*Baumberger v. Arff* (1892) 96 Cal. 261, 262.)

Chad filed neither a noticed motion nor an ex parte request for a continuance. More importantly, he did not make an "affirmative showing of good cause" to continue trial. (Cal. Rules of Court, rule 3.1332(c).) Chad received notice in September 2021 that the trial – for which dissolution proceedings had been pending since 2014 – was scheduled for December 9. He then waited until December 3, less than one week before trial, to file a substitution of counsel. Both Chad and Piesner knew of a calendaring conflict at least four days before the trial began. Nonetheless, Peisner waited until December 7 to contact Marni's counsel to seek a stipulated continuance. After she declined, Piesner then waited until the morning of trial to request a continuance from the court based upon an unsupported "representation that Mr. Darling ha[d] tested positive for COVID."

The court noted Chad's prior conduct. "This 11th hour request was not Chad's first. Throughout this litigation, Chad has sought untimely continuances for all manner of reasons including claims he was ill; had car trouble; and needed to obtain

5

counsel." He "frustrated the litigation process and increased the cost of litigation repeatedly. He did not comply with Court orders, refused to provide necessary discovery and disclosures, and in general made good on his threat to Marni early on to make this process as expensive and as painful as possible in retribution for Marni's decision to proceed with the divorce." We agree. The court properly considered all relevant factors as required under rule 3.1332. It did not abuse its discretion in denying Chad's untimely, unsupported request for a continuance.

*No Denial of a Fair Hearing*

Chad next contends that allowing the trial to proceed "while denying [him] the ability to make objections or challenge [Marni's] witnesses' testimony or credibility via cross-examination denied [him] of a fundamental and essential element of due process" which "constitutes a reversible error." But, "[i]t is a well-recognized proposition that '[a] person is free to waive any or all procedures required and designed to safeguard fundamental rights' and that a person may waive the right of cross-examination." (*In re Marriage of S.* (1985) 171 Cal.App.3d 738, 745.) "Such waiver may be express, i.e., by stipulation of the parties, or implied." (*Ibid.*) "It is also a fundamental principle of appellate review that objections must be raised in the trial court to preserve questions for review. Appellate courts will not consider objections that were not presented to the trial court. [Citation] In civil cases, constitutional questions not raised in the trial court are considered waived." (*Ibid.*)

The record contains the reporter's transcripts of the first day of trial on December 9, 2021 and the court's oral ruling on May 9, 2022. It does not contain a transcript for the second day of trial on March 30, 2022, in which Chad and his counsel appeared. This deficiency in the record precludes us from determining what occurred on March 30, including whether Chad

6

requested to cross-examine Marni's witnesses, whether he made objections to Marni's evidence, and whether the court denied his requests. Chad assumes "the trial court had already foreclosed [his] ability to" conduct cross-examination and make evidentiary objections because it "closed evidence subject to affording Chad the opportunity to testify and for rebuttal purposes only." To the extent Chad's argument is that any request to cross-examine Marni's witnesses or object to her evidence would have been futile, he offers no convincing argument or support for this contention in the record. Instead, the record supports that Chad appeared at the second day of trial and presented his evidence without objection to the proceedings that took place on the first day of trial.

Chad's due process violation claim thus fails because he did raise any objection in the trial court.

DISPOSITION

Judgment is affirmed. Respondent shall recover her costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

YEGAN, Acting P.J.

BALTODANO, J.

7

Charmaine Buehner, Judge
Superior Court County of Ventura

_____

Ferguson Case Orr Paterson, Wendy C. Lascher, for Plaintiff and Respondent.

Decker Law, James D. Decker, Griffin R. Schindler, for Defendant and Appellant.