[No. H002879. Sixth Dist. Apr. 28, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD SCOTT, Defendant and Appellant.

COUNSEL

John McDougall, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, and Laurance K. Sullivan, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

AGLIANO, P. J.—

## I.

Following a jury trial Richard Scott was convicted of two counts of robbery (Pen. Code,[1] § 211) with the use of a firearm. (§ 12022, subd. (a).) In a bifurcated trial to the court, various recidivist allegations were found true. On appeal, defendant contends the court committed instructional and sentencing error. We affirm.

### BACKGROUND

On August 24, 1986, at approximately 1:00 p.m., Mary Maier returned to her car, a gold-colored 1985 Buick Regal, license number 1PYR985, after shopping at the Emporium in San Jose. After she entered the car a man she later identified as defendant opened the driver's door and told her to get

---

[1] All further statutory references are to the Penal Code.

out. Ms. Maier did as she was ordered and the man and a companion got into the car and drove away.

About an hour after the theft of Ms. Maier's car, Mark Mansheim, a sales clerk for Walgreen's in San Jose, noticed a man wandering around the camera department and asked if he needed help. After a brief conversation the man, later identified as Lorenzo Fosselman, picked out an audio cassette carrying case and brought it to the counter where Mansheim rung up the sale. Fosselman withdrew a pistol from under his jacket and said, "Give me your money and put it in a bag." Mansheim complied and Fosselman left the store.

Mansheim immediately called 911 and, while on the phone, saw two men depart the parking lot in a speeding car he thought was a tan Chrysler. He noted the license plate included the characters "1P." The car turned right onto El Camino toward Highway 85. He reported this information to the 911 dispatcher.

Mountain View police officer Steven Garcia heard the radio broadcast and drove to the intersection of Highway 85 and northbound Highway 101. About a minute after his arrival, he saw and followed a car he described as a brown Chrysler travelling northbound on Highway 101 at a high rate of speed. When the car exited the freeway at Embarcadero, Garcia activated his red light and siren. In an effort to avoid apprehension, the driver ran a traffic light and drove on the wrong side of the road. At this point Officer Garcia got a good look at the driver. The car headed north on Bayshore Frontage Road and finally came to a stop when it was unable to negotiate a 90-degree turn onto Cooley. The driver and passenger left the car and ran toward an abandoned hotel complex with the officer in pursuit. Officer Garcia lost sight of the men and radioed for assistance. A couple of minutes later, he was advised two men had been arrested. Shortly thereafter, Mansheim arrived at the scene where he identified one of the men, Fosselman, as the man who had robbed him. He also identified the car as the one he had seen leaving the Walgreen's parking lot after the robbery. The car turned out to be the 1985 Buick Regal stolen earlier that afternoon from Ms. Maier. Officer Garcia identified defendant as the person he had seen driving the car.

Ms. Maier testified she was very upset and had told police officers at the scene that the incident happened so fast she couldn't remember what the men looked like. However, one of the officers testified Ms. Maier had indicated she could identify one of the suspects. At trial she identified defendant as the man who had opened her car door and ordered her out.

## DISCUSSION

*Propriety of the Flight Instruction*

██ In a modified version of CALJIC No. 2.52, the trial court over defendant's objection instructed the jury on flight.[2] On appeal, defendant renews his objection by arguing it was error to give the flight instruction where, as here, the identity of the perpetrator is a contested issue. (*People* v. *Parrish* (1986) 185 Cal.App.3d 942, 948 [230 Cal.Rptr. 118]; *People* v. *Jackson* (1986) 187 Cal.App.3d 499, 511 [231 Cal.Rptr. 889].)

The People, relying on *People* v. *Moringlane* (1982) 127 Cal.App.3d 811 [179 Cal.Rptr. 726], contend the instruction was properly given since there was uncontradicted evidence of a second episode of flight by defendant which was probative of defendant's participation in both crimes.

In *Moringlane,* perpetrators fled the immediate scene of the crime. Fifteen minutes later, police officers observed defendant walking and sought to detain him for questioning. When told to stop, defendant began running. The principal issue at trial was the accuracy of eyewitness identification at the time and place of the crime. Noting that the jury could have inferred defendant was attempting to flee to avoid arrest for the crime, the reviewing court held the flight instruction "was not entirely unwarranted." (*Id.* at p. 822.)

As was the case in *Moringlane,* the evidence of subsequent flight by the defendant here was material. We view as highly significant defendant's speeding departure from the location of the Walgreen's robbery in Maier's stolen car and his subsequent attempt to escape on foot.

 Defendant was identified by Officer Garcia as the driver of the car and he, together with Fosselman, was apprehended in close proximity to the abandoned car. If the jury believed that it was, indeed, the defendant who drove Ms. Maier's car from the scene of the Walgreen's robbery, his flight from the police logically disclosed his consciousness of guilt as to either or both the theft of Ms. Maier's car and the Walgreen's robbery. As to the latter crime his flight tended to implicate him as an aider and abettor. (§ 31.) ██ Simply put, the flight instruction not only should, but must be given where evidence of flight tends logically and reasonably to establish guilt of the defendant. (§ 1127c; *People* v. *Cannady* (1972) 8 Cal.3d 379,

---

[2] The court charged the jury: "The flight of a person immediately after the commission of a crime or after he is accused of a crime is not sufficient in itself to establish his guilt. But is a fact which if proved may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to be given such circumstance is entitled - is entitled to the jury for your consideration. [*sic*]" (See CALJIC No. 2.52.)

391-392 [105 Cal.Rptr. 129, 503 P.2d 585].) The weight to be accorded the evidence was for the jury to determine.

This case presents a factual situation which distinguishes it from other cases in which evidence merely that the perpetrator fled from the immediate scene of the crime is deemed immaterial in establishing the identity of the perpetrator. (See, e.g., *People v. Jackson, supra,* 187 Cal.App.3d 499; *People v. Malgren* (1983) 139 Cal.App.3d 234 [188 Cal.Rptr. 569]; *People v. Salazar* (1982) 108 Cal.App.3d 992 [167 Cal.Rptr. 38]; *People v. Anjell* (1979) 100 Cal.App.3d 189 [160 Cal.Rptr. 669].)

 Further, as with all instructions, the jury was charged to "disregard any instruction which applies to a state of facts which you determine does not exist." The instruction itself cautions the jury to consider flight "if proved" and "in the light of all other proved facts." It therefore " 'assumed neither the guilt nor flight of the defendant.' " (*People v. Cannady, supra,* 8 Cal.3d at p. 392, quoting *People v. Daener* (1950) 96 Cal.App.2d 827, 832-833 [216 P.2d 511].) Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions. (*People v. Romo* (1975) 47 Cal.App.3d 976, 990 [121 Cal.Rptr. 684], disapproved on other grounds in *People v. Bolton* (1979) 23 Cal.3d 208, 213-214 [152 Cal.Rptr. 141, 589 P.2d 396]; *People v. Ryan* (1981) 116 Cal.App.3d 168, 179 [171 Cal.Rptr. 854].)

## II.

 Defendant next contends the cause must be remanded for resentencing due to an alleged failure of the trial court to state reasons for imposition of a consecutive term.

When defendant appeared for judgment and sentence on February 4, 1987, the court imposed a prison term of twenty-two years, consisting of the upper term of five years on count II, a one-year consecutive term for the arming enhancement, a one-year consecutive term for count I (one-third the middle term), plus fifteen years for three prior serious felony allegations pursuant to sections 667, subdivision (a) and 1192.7.[3] The court did not

---

[3] The court pronounced judgment as follows: "As to Count two of the Information, the Court deems it appropriate to impose the aggravated sentence of five years in that case. And the aggravated circumstances as set forth in the probation report which are - weigh heaviest in the Court's mind are the factor A-8 the premeditation which is manifested by the robbery charge in Count obe [*sic*] of the Information taking the car. It appears for the purpose of perpetrating the offenses set forth in Count two of the Information in Mountain View. Also, the serious nature of this particular crime involving a firearm. I appreciate that you did not have the firearm in your possession under the evidence in the case. Your co-participant did. And further that you were on parole at the time of the commission of the crimes. Accordingly the court as to Count Two will impose the aggravated term of five years. Additionally under 12022(a) on the arming clause the Court will impose an additional one year term. For a

specify any mitigating factors[4] and properly relied on two aggravating circumstances in selecting the upper term for count II: premeditation, as evidenced by the fact that Ms. Maier's car was apparently stolen for the purpose of perpetrating the robbery charged in count II (Cal. Rules of Court, rule 421(a)(8)),[5] and the fact that defendant was on parole when he committed the offense (rule 421(b)(4)). The trial court did not articulate any reasons for its choice of a consecutive term. Nevertheless, we are persuaded the error was harmless.

The probation officer's report noted that defendant's criminal history dates back to 1972 and includes nine felony convictions and three commitments to the California Department of Corrections. The report also contained information received from defendant's parole agent indicating defendant had twice tested positive for heroin in two recent chemical tests. In addition to the factors specified by the trial court, the probation officer listed several additional aggravating circumstances which were present in the instant case, including: defendant's role of leadership or dominance as to count I (rule 421(a)(5)), the fact that defendant has engaged in a pattern of violent conduct which indicates a serious danger to society (rule 421(b)(1)), defendant's prior convictions as an adult are numerous (rule 421(b)(2)), and defendant's prior performance on probation or parole was unsatisfactory (rule 421(b)(5)). Finally, the crimes were committed at separate times and places (rule 425(a)(3)), and fully warranted consecutive terms. Accordingly, we conclude it is not reasonably probable defendant would receive a more favorable sentence on remand. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Blessing* (1979) 94 Cal.App.3d 835, 838-839 [155 Cal.Rptr. 780].)

### III.

The judgment is affirmed.

Brauer, J., and Capaccioli, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 27, 1988.

---

total of six years. . . . [¶] As to Count I of the Information the Court . . . is of the opinion that the aggravated circumstances outweigh those in mitigation and accordingly imposes the aggravated term of five years. With one year to be - one-third of the midterm one year to be served consecutive to the sentence heretofore imposed. . . ."

[4] The probation officer listed one possible mitigating factor, i.e., that defendant exercised caution to avoid harm to persons (Cal. Rules of Court, rule 423(a)(6)). The court apparently rejected this as a mitigating factor.

[5] All rule citations are to the California Rules of Court.