Filed 6/23/14  P. v. Camacho CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G047869 |
|      v. | (Super. Ct. No. 11CF2050) |
| JESSE CAMACHO, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kimberley A. Donohue and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Jesse Camacho contends there is insufficient evidence to support his conviction for receiving stolen property, and the trial court miscalculated his presentence conduct credits. He also asserts the court erred in failing to reduce his convictions from felonies to misdemeanors. We reject appellant's claims and affirm the judgment against him.

FACTS

On July 29, 2011, at 3:45 a.m., Patrol Officer Otilio Sanchez received a report of a prowler in the vicinity of Alco Avenue in Santa Ana. Upon responding to the area, Sanchez parked his squad car and proceeded down Alco on foot. His attention was drawn to a Honda Accord that was parked on Alco because its brake lights were on and there were three men inside the vehicle. Ceasar Cruz was in the driver's seat, David Curiel was in the front passenger seat, and appellant was in the back. Sanchez didn't know it at the time, but the car had recently been stolen from an apartment complex in Tustin.

For his safety, Sanchez shone his flashlight inside the car, and at that point, the men exited the vehicle and began to walk away. Sanchez called out for them to stop, but they took off running instead. Cruz went one way, and appellant and Curiel ducked behind a car that was parked in the driveway at 2014 Alco. Sanchez positioned himself near that residence and called for backup. While he was waiting for help to arrive, he saw appellant and Curiel walk up to the house and bang on the front door. When Marisol Hernandez answered the door, they forced their way inside her home and told her the police were after them.

Although Hernandez knew Curiel from the neighborhood, she wanted him and appellant to leave because she was scared and didn't want any problems. Her 19-year-old son and a female lessee were also in the house at the time. None of them could convince the two interlopers to leave. When the police knocked on the door, Curiel told Hernandez not to answer it, but she did. The police whisked her and her son outside and

2

proceeded to search the home. Curiel was found hiding in one of the bedrooms, and appellant was captured in the garage following a brief struggle. A short time later, Cruz was apprehended in the backyard of a nearby residence.

A search of the stolen Accord revealed a filed-down key inserted halfway into the ignition switch. There were also several cans of beer on the rear passenger floorboard, which appellant admitted he brought into the car.

Cruz and Curiel pled guilty, but appellant went to trial. A gang expert testified appellant, Curiel and Cruz were all members of a Santa Ana street gang called F-Troop. He also opined they had acted in association with one another and benefited F-Troop on the night in question by stealing the Accord and attempting to flee from the police. Explaining the mentality of gang members, the expert said they thrive on respect, which is earned by committing crimes. So when they engage in criminal activity, they tend to talk about it with their peers. Trust is also important. A gang member generally wouldn't go around riding in a stolen vehicle with others if he thought they might "snitch" on him or "give [him] up."

Appellant, Cruz and Curiel all testified at trial. Cruz claimed he stole the Accord by himself and then picked up appellant and Curiel at appellant's residence. He did not tell them the Accord was stolen, and they never asked any questions about the vehicle. After driving around in search of a party for about 20 minutes, they pulled over on Alco to get better directions. That's when Officer Sanchez approached them with his flashlight. At that point, Cruz told appellant and Curiel the car was stolen, and they were "shocked." According to appellant, he ran because he was on parole and didn't want to get in trouble for hanging around with gang members. He testified that while he and Curiel were good friends, and Curiel and Cruz were well acquainted, he didn't really know Cruz that well, and he had no idea the Accord was stolen.

Appellant, Cruz and Curiel also testified they were not gang members. However, in addition to pleading guilty to stealing the Accord and receiving stolen

3

property, respectively, Cruz and Curiel both admitted they acted to benefit F-Troop. For his part, appellant admitted he had a tattoo with the name F-Troop on it, and he had previously been convicted of robbery.

In the end, the jury convicted appellant of receiving stolen property and actively participating in a criminal street gang. (Pen. Code, §§ 496, subd. (a), 186.22, subd. (a).)[1] The jury was unable to reach a verdict on the charge of false imprisonment (§§ 236, 237, subd. (a)) or the allegation appellant acted for the benefit of a criminal street gang (§ 186.22, subd. (b)), and those charges were ultimately dismissed. However, the trial court did find true allegations that appellant had suffered a prior strike and a prior serious felony conviction and that he had served a prior prison term. (§§ 667, 667.5.) In light of these findings, the court sentenced appellant to nine years in prison.

I

Appellant contends there is insufficient evidence to support his conviction for receiving stolen property. We disagree.

The standard of review for assessing the sufficiency of the evidence to support a criminal conviction is "highly deferential." (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 538.) Our task is to """"examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence[.]"""" (*People v. Alexander* (2010) 49 Cal.4th 846, 917.) "Although we must ensure the evidence is reasonable, credible, and of solid value," we must keep in mind "it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.]" (*People v. Jones* (1990) 51 Cal.3d 294, 314.) Moreover, where the circumstances reasonably justify the trier of fact's findings, it doesn't matter whether they might also reasonably be reconciled with a contrary finding; reversal is not required unless there is no hypothesis

_____

[1] All further statutory references are to the Penal Code.

4

under which there is substantial evidence to support the jury's verdict. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

To prove the crime of receiving stolen property, the prosecution must establish "'(1) the property was received, concealed, or withheld by the accused*;* (2) such property had been obtained by theft or extortion; and (3) the accused knew that the property had been so obtained.' [Citation.]" (*People v. Grant* (2003) 113 Cal.App.4th 579, 596.) Appellant challenges the sufficiency of the evidence as to the first and third requirements.

As for the knowledge requirement, the law is well established that possession of recently stolen property is so incriminating that the presence of any additional suspicious circumstances will justify an inference the possessor knew the property was stolen. (*People v. Vann* (1974) 12 Cal.3d 220, 225; *People v. McFarland* (1962) 58 Cal.2d 748, 754.) In this case, appellant was discovered sitting in a recently stolen car with two fellow gang members and a filed-down key sticking halfway out of the ignition. Although there was no direct evidence appellant was involved in the vehicle's taking, his presence in the car shortly thereafter, at three o'clock in the morning, was certainly suspicious. So was his claim at trial that he didn't know the car was stolen. According to appellant and his companions, Cruz never mentioned this fact and nobody asked a single question about the car. But Cruz and Curiel were impeached at trial by virtue of their criminal conduct. And the gang expert testified gang members earn respect by bragging about their crimes. Therefore, the jury could logically infer that, in order to enhance his standing in their gang, Cruz told appellant and Curiel he had heisted the car. This inference makes eminent sense in light of the gang subculture in which they were immersed.

Appellant's flight from officer Sanchez is also probative of whether he knew the car was stolen. While he testified he fled because of his parole status, the jury was not obliged to accept that explanation. Rather, it could reasonably consider

5

appellant's flight from the police as evidence of his consciousness of guilt as to the subject offenses. (*People v. Scott* (1988) 200 Cal.App.3d 1090, 1094.) Viewing all the evidence in favor of the judgment below, there is substantial evidence to support the jury's finding appellant knew the car was stolen.

Appellant's knowledge in this regard is relevant to the issue of whether in possessing the car he received, concealed or withheld it within the contemplation of the statute. As recognized in *People v. Land* (1994) 30 Cal.App.4th 220, 227, "'an inference of possession may arise from a passenger's presence in a stolen automobile when that presence is coupled with additional evidence that the passenger knew the driver, knew that the vehicle was stolen, and intended to use the vehicle for his or her own benefit and enjoyment.'"

Here, not only was there substantial evidence appellant knew the Accord was stolen, appellant also knew the driver Cruz, and he was good friends with the third occupant, Curiel. In fact, all three of them belonged to the same criminal street gang. Without trying to read too much into the gang connection, we believe a certain amount of familiarity and camaraderie can be inferred from the trio's mutual gang ties. After all, the gang expert testified gang members have to be able to trust each other when they are out committing crimes, and in his mind, that would include the situation when they were riding around in a stolen car.

Also telling is the fact that, not long after stealing the vehicle, Cruz picked up appellant and Curiel to go to a party. Appellant admitted he brought along several beers and quite obviously intended to use the Accord for his own benefit and enjoyment. On this record, the jury could reasonably conclude appellant possessed the Accord so as to support his conviction for receiving stolen property. (See *People v. Land, supra*, 30 Cal.App.4th at p. 228 [passenger's relationship with the driver, his knowledge the car was stolen, and the fact he used the car for his personal benefit sufficiently proved he possessed the car]; compare *In re Anthony J.* (2004) 117 Cal.App.4th 718, 729

[insufficient evidence to prove possession element where "the People's case at most demonstrated mere presence by (the defendant) in the stolen vehicle."].)

                                        II

        Next, appellant claims the trial court abused its discretion in denying his request to reduce his convictions from felonies to misdemeanors. This claim also fails.

        When, as here, the crimes for which the defendant was convicted are so-called "wobblers," meaning they are punishable as either felonies or misdemeanors (see §§ 496, subd. (a) [receiving stolen property], 186.22, subd. (a) [active gang participation]), the trial court is empowered under section 17, subdivision (b) to treat them as misdemeanors for sentencing purposes. (*People* v. *Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 974.) In deciding whether to exercise this power, the trial court should consider, inter alia, the nature of the defendant's offenses, his criminal history, his appreciation of and attitude toward his crimes, and the need to protect society. (*Id.* at pp. 978-979.) The court has broad discretion in this area, and its decision will not be disturbed unless it is shown to be irrational or arbitrary. (*Id.* at pp. 977-978.)

        Although appellant requested the trial court to reduce his convictions to misdemeanors, it declined to do so. The judge told appellant, "You have demonstrated through your criminal conduct . . . that you do pose a danger to the public. You have committed serious offenses in the past and continue to violate the law." As a matter of fact, while appellant was out on bail in the present case, he was arrested and charged with stealing from a department store. His numerous prior offenses include robbery, burglary, hit-and-run driving under the influence and resisting arrest. He has never successfully completed a grant of probation. Despite having good family support and a scholarship to play football at a private high school, appellant squandered the numerous opportunities he was afforded and has instead immersed himself in drugs, alcohol and the gang subculture. While he denied being a gang member, the jury found otherwise, and

                                        7

appellant not only had an F-Troop tattoo, but admitted to the probation officer that he hangs around with F-Troop members and would defend them in a pinch.

In short, through his past and present offenses, as well as his lifestyle choices, appellant has demonstrated propensities that warrant an extended prison commitment. We do not believe the trial court abused its discretion in treating his present crimes as felonies and sentencing him to prison as a second-strike offender.

III

As part of its sentencing decision, the trial court also awarded appellant 740 days of presentence credit, based on 494 days of actual custody, plus 246 days of conduct credit. Appellant contends he is entitled to additional conduct credit, but that is not the case.

Pursuant to section 4019, defendants have historically been entitled to receive presentence conduct credit (for work and good behavior) at the rate of two days for every four days spent in custody. (Former § 4019, subd. (f), as amended by Stats. 1982, ch. 1234, § 7, pp. 4553, 4554.) That changed in 2011, when, as part of the Criminal Justice Realignment Act, the Legislature amended section 4019 to allow conduct credit at the rate of two days for every two days spent in actual custody. (§ 4019, subds. (b), (c) & (f), as amended by Stats. 2011, ch. 15, § 482.) However, the 2011 amendment did not become operative until October 1, 2011, and by its terms, it only applies "prospectively" to defendants who are confined for a crime committed on or after that date. (§ 4019, subd. (h), as amended by Stats. 2011, ch. 39, § 53.) Appellant admits the preamendment rate applies to the time he spent in custody from the date of his offense on July 29, 2011 until September 30, 2011. However, he contends that as a matter of equal protection, he should be given the enhanced credit rate for the 430 days he was in custody from October 1, 2011 to December 3, 2012, the day he was sentenced.

We agree with appellant that the first prerequisite for establishing an equal protection violation was met in this case. Indeed, this court has acknowledged "the

8

current version of section 4019 creates a classification that affects two similarly situated groups [i.e., those whose crimes occurred before October 1, 2011 and those whose crimes occurred on or after that date] in an unequal manner. [Citation.]" (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 54 (*Rajanayagam*).) Nevertheless, recognizing that one of the primary purposes of the Realignment Act was to reduce prison spending, we found the statute was rationally related to that objective, so as to pass constitutional muster.

Specifically, we held, "[I]n choosing October 1, 2011, as the effective date of [the credit rate increase], the Legislature took a measured approach and balanced the goal of cost savings against public safety. The effective date was a legislative determination that its stated goal of reducing corrections costs was best served by granting enhanced conduct credits to those defendants who committed their offenses on or after October 1, 2011. To be sure, awarding enhanced conduct credits to everyone in local confinement would have certainly resulted in greater cost savings than awarding enhanced conduct credits to only those defendants who commit an offense on or after the amendment's effective date. But that is not the approach the Legislature chose in balancing public safety against cost savings. [Citation.] Under the very deferential rational relationship test, we will not second-guess the Legislature and conclude its stated purpose is better served by increasing the group of defendants who are entitled to enhanced conduct credits when the Legislature has determined the fiscal crisis is best ameliorated by awarding enhanced conduct credit to only those defendants who committed their offenses on or after October 1, 2011." (*Rajanayagam, supra*, 211 Cal.App.4th at pp. 55-56.)

Instead, we determined in *Rajanayagam* that the Legislature's decision to apply section 4019 prospectively to defendants who were confined for crimes committed on or after October 1, 2011 was fully consistent with the constitutional guarantee of equal protection. (*Rajanayagam, supra*, 211 Cal.App.4th at pp. 53-56.) Other courts have

9

concluded similarly.  (See, e.g., *People v. Verba* (2012) 210 Cal.App.4th 991, 994-997; *People v. Kennedy* (2012) 209 Cal.App.4th 385, 397-400.)  For the reasons explained in those decisions, and consistent with our holding in *Rajanayagam,* we reject appellant's equal protection argument and uphold the trial court's decision to award him conduct credit at the rate of two days for every four days he spent in actual custody.  There is no basis for disturbing the trial court's decision in that regard.

DISPOSITION

The judgment is affirmed.

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

ARONSON, J.

10