Filed 7/8/22 P. v. Perez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078155 |
| v. | (Super.Ct.No. SWF1707851) |
| CHRISTOPHER DANIEL PEREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Mark Mandio, Judge. Affirmed with directions.

Cindy Brines, by appointment of the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I. INTRODUCTION

This is the second appeal by defendant and appellant, Christopher Daniel Perez, following resentencing. Defendant was convicted by a jury of eight offenses arising out of three separate incidents of domestic violence. (*People v. Perez* (Dec. 4, 2020, E073399 [nonpub. opn.]) (*Perez I*).) In *Perez I*, this court affirmed the judgment, but remanded the matter for resentencing.

At resentencing, the trial court imposed the upper term on the principal offense but failed to provide a statement of reasons in support of its decision to do so. Shortly after defendant's resentencing, Penal Code[1] section 1170 was amended to prohibit a trial court from imposing an upper term sentence unless there are aggravating circumstances, and the defendant has either stipulated to the facts underlying those circumstances or those facts were found true beyond a reasonable doubt. (§1170, subd. (b)(1)-(2); *People v. Flores* (2022) 75 Cal.App.5th 495, 500.) Defendant again appeals, arguing that we should again remand the matter for resentencing because "[t]he record does not make clear what aggravating factors the trial court [relied] on to impose the upper term or whether the aggravating factors upon which the trial court relied were admitted by [defendant] or found beyond a reasonable doubt."

---

[1] Undesignated statutory references are to the Penal Code.

We conclude that (1) defendant has forfeited any claim of error based upon the trial court's failure to give an adequate statement of reasons for imposing an upper term sentence; (2) even in the absence of forfeiture, defendant has not suffered prejudice warranting reversal as the result of any failure to provide an adequate statement of reasons; and (3) defendant has not suffered prejudice warranting reversal, even under the newly amended version of section 1170. As such, we affirm the judgment but order the abstract of judgment modified to correct a clerical error, as well as a miscalculation of defendant's custody credits.

## II. FACTS & PROCEDURAL HISTORY

### A. *Background*

Defendant and H.Q. began a dating relationship in August 2017. (*Perez I*, *supra*, E073399.)

On November 17, 2017, defendant struck H.Q. multiple times in the head while they were arguing inside a vehicle. (*Perez I*, *supra*, E073399.) When H.Q. tried to get out of the vehicle, defendant punched her in the face, forced her back in the vehicle, and drove her around for hours. (*Ibid.*) Defendant was convicted of one count of willful infliction of corporal injury upon someone with whom he had a dating relationship (§ 273.5, count 5) and one count of kidnapping (§ 207, subd. (a), count 6) arising out of this incident. (*Perez I*, *supra*, E073399.)

On December 15, 2017, following an argument, defendant placed H.Q. into a chokehold. (*Perez I*, *supra*, E073399.) As a result, H.Q. lost consciousness. (*Ibid.*) When H.Q. regained consciousness, she was lying on the floor, and defendant was

3

yelling at her. (*Ibid*.) H.Q. attempted to scream, but defendant began to choke her again and threatened to continue choking her until she stopped screaming. (*Ibid*.) Defendant was convicted of one count of willful infliction of corporal injury upon someone with whom he had a dating relationship (§ 273.5, count 8) and one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), count 7) arising out of this incident. (*Perez I*, *supra*, E073399.)

On December 19, 2017, H.Q. ended her relationship with defendant and asked him to leave her home. (*Perez I*, *supra*, E073399.) The two began to argue, and defendant took H.Q.'s phone from her. (*Ibid*.) While they were arguing, H.Q.'s pastor arrived at her front door and began knocking loudly. (*Ibid*.) H.Q. had texted her pastor earlier and had asked him to come check on her in 30 minutes if he did not hear from her. (*Ibid*.) Defendant would not let H.Q. leave her bedroom to answer the door. (*Ibid*.) H.Q. tried to scream to get her pastor's attention, but defendant began strangling her to make her stop screaming. (*Ibid*.) When H.Q. did not answer the door, her pastor called 911. (*Ibid*.)

Defendant shut the bedroom door, moved a dresser in front of the door, turned off the lights, and told H.Q. he was going to stay there and watch her all night. (*Perez I*, *supra*, E073399.) After some time, police officers arrived, announced their presence, and shouted for them to come out of the apartment. (*Ibid*.) While the officers were outside, defendant pulled down H.Q.'s pants and underwear and began to have sex with her. (*Ibid*.) H.Q. did not resist because she was afraid. (*Ibid*.)

4

Police officers eventually entered the apartment after obtaining a key from H.Q.'s apartment manager. (*Perez I*, *supra*, E073399.) They discovered H.Q., shaking and crying, with bruises on both sides of her neck, and red marks on her carotid arteries. (*Ibid*.) Defendant was escorted out of the apartment and taken into custody. (*Ibid*.) He was convicted of one count of willful infliction of corporal injury upon someone with whom he had a dating relationship (§ 273.5, subd.(f)(1), count 1); one count of rape (§ 261, subd. (a)(2), count 2); one count of dissuading a witness (§ 136.1, subd. (b)(1), count 3); and one count of false imprisonment (§ 236, count 4), arising out of this incident. (*Perez I*, *supra*, E073399.)

In a bifurcated proceeding, the trial court found true allegations that defendant had sustained four prior prison sentences qualifying for a sentence enhancement (former § 667.5, subd. (b); Stats. 2018, ch. 423, § 65); a prior conviction qualifying as a serious prior felony (§ 667, subd. (a)); and a prior conviction qualifying as a strike offense (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)). (*Perez I*, *supra*, E073399.)

B. *Defendant's Initial Sentence*

Defendant's initial sentencing hearing was held on August 9, 2019. Defendant brought a motion to dismiss the strike offense as well as his prison priors and presented evidence of potential mitigating factors in support of that request. The prosecutor opposed the motion, noting that defendant had an extensive history of prior criminal convictions, as well as the fact that defendant was on probation for a different offense at the time he committed the current offenses. The trial court denied defendant's motion, explicitly referencing his "past criminal history" and stating: "I do not think his

5

prospects of living crime-free in the future are good at all based on past history. . . . [W]hen you do the number of bad things he's done, whether they're defined instances or not, you become a danger to society . . . ."

The trial court proceeded to sentence defendant, offering the following prefatory statement: "Okay. I have a lot to say, but I'm going to bottom line this for you so you're not sitting there. I'm going to sentence you to the maximum amount of time I believe I can sentence you to; okay? [¶] The reason I'm going to do that is because I see, and so did all those women see, like your mom sees, you have good qualities. The problem is you get angry and you assault people who trust you, okay, and your type of assault, this grabbing around the neck in an arm hold like that, or arm hold and strangling them, is incredibly dangerous. And we're lucky we're not here for a murder. [¶] And I think this has been a pattern of conduct with you. I don't think it's going to stop. I don't think you can stop yourself. And I do not believe that you are safe out in the public. That is the bottom line."

The trial court then sentenced defendant to a total of 41 years and eight months in state prison. (*Perez I*, *supra*, E073399.) The sentence included an upper term for the kidnapping conviction (§ 207, subd. (a), count 6) and consecutive sentences on all counts. However, other than its prefatory statement, the trial court offered no reasons for these discretionary sentencing choices and neither party objected or requested a more detailed statement. The sentence also included one-year enhancements for each of defendant's four prior prison terms pursuant to former section 667.5, subdivision (b). (*Perez I*, *supra*, E073399.)

6

C. *Appeal and Resentencing*

Defendant appealed from the judgment and, on December 4, 2020, this court issued its opinion affirming the judgment but remanding the matter for resentencing. (*Perez I*, *supra*, E073399.) Specifically, we concluded the trial court erred in imposing a sentence less than that statutorily mandated for dissuading a witness (count 3); that prior prison term enhancements should be stricken as a result of amendments to section 667.5; and that the trial court could not order defendant to participate in counseling or education as part of his sentence. (*Perez I*, *supra*, E073399.)

Defendant was resentenced on October 6, 2021. Despite our directive to strike the prison prior enhancements imposed pursuant to section 667.5, the trial court apparently struck only the punishment for those enhancements. The trial court also exercised its discretion to impose a consecutive sentence for dissuading a witness and, as a result, imposed a full middle term sentence for that offense. It also modified the abstract of judgment to clarify it was only recommending defendant participate in counseling or educational programs and purported to recalculate defendant's custody credits. As a result, defendant was sentenced to a total of 39 years eight months in state prison, which again included the imposition of the upper term on count 6.

The trial court did not offer a new statement of reasons for its sentencing choices and, instead, stated only that it would not revisit any aspects of the prior sentence other than those specifically mentioned on the record. Defendant did not object to the trial court's failure to provide a new statement of reasons in support of its sentencing choices at the time of resentencing.

## III. DISCUSSION

A. *Legal Background and Issues Presented*

Effective January 1, 2022, Senate Bill No. 567 (2021-2022 Reg. Sess.) amended section 1170, subdivision (b), which guides the trial court's discretion in sentencing a defendant when the applicable statutes specify three possible terms for imposition of a judgment of imprisonment. (§ 1170, subd. (b).) As amended, section 1170, subdivision (b), now provides the middle term of imprisonment as the presumptive sentence, and it permits a trial court to "impose an upper term sentence only where there are aggravating circumstances in the crime and the defendant has either stipulated to the facts underlying those circumstances or they have been found true beyond a reasonable doubt." (*People v. Flores*, *supra*, 75 Cal.App.5th at p. 500; § 1170, subd. (b)(1)-(2).)

Under the amended statute, the truth of any facts in support of an aggravating circumstance must be tried in a bifurcated proceeding, except where the evidence is also relevant to prove or defend against a charged offense or enhancement. (§ 1170, subd. (b)(2).) Further, the trial court is permitted to consider a defendant's prior convictions based on a certified record of conviction without submitting the prior convictions to a jury. (§ 1170, subd. (b)(3).) The amendment to section 1170, subdivision (b), applies retroactively to all cases not yet final because it has the potential to lessen the punishment for a defendant's crimes. (*People v. Flores*, *supra*, 75 Cal.App.5th at p. 500; *People v. Garcia* (2018) 28 Cal.App.5th 961, 972; *In re Estrada* (1965) 63 Cal.2d 740, 744-745.)

8

Here, it is undisputed that the trial court imposed the upper term for kidnapping (§ 207, subd. (a), count 6) when resentencing defendant, and the People concede that section 1170, subdivision (b), as amended, applies retroactively to this case. Thus, the only contested issue on appeal is whether the statute requires us to again remand the matter for resentencing. With respect to the application of the newly amended section 1170, subdivision (b), the opening brief argues only that: "The record does not make clear what aggravating factors the trial court [relied] on to impose the upper term or whether the aggravating factors upon which the trial court relied were admitted by [defendant] or found beyond a reasonable doubt."

As we explain, defendant has forfeited any claim of error based on the trial court's purported failure to state its reasons for imposing the upper term on count 6 at the time of sentencing or resentencing. Additionally, we conclude that, even in the absence of forfeiture, we would find no prejudice warranting reversal, even under the newly amended provisions of section 1170, subdivision (b).

B. *Defendant Has Forfeited Any Claim Based Upon the Trial Court's Failure To State Its Reasons and Any Such Error Was Harmless Even Absent Forfeiture*

    1. <u>Forfeiture</u>

"[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356; see *People v. Wall* (2017) 3 Cal.5th 1048, 1075 ["[A] defendant forfeits on appeal any 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' in the absence

of objection below."].)  The rule of forfeiture applies in " 'cases in which the state reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or to give a sufficient number of valid reasons.' " (*People v. Boyce* (2014) 59 Cal.4th 672, 730-731.)

Here, defendant contends on appeal that "[t]he record does not make clear what aggravating factors the trial court [relied] on to impose the upper term." However, the record does not show that defendant raised any objection to the trial court's statement of reasons, either at the time of his original sentencing or resentencing. Notably, defendant did not address the forfeiture issue in reply, even after the People raised that point in the respondent's brief. We agree with the People that any claim of error premised upon the trial court's failure to identify which aggravating factors it relied upon to impose the upper term on count 6 have been forfeited and cannot support reversal or remand in this case.

This is particularly true where, as here, the court was required to state the reasons for selecting the upper term even prior to the changes to section 1170, subdivision (b), effectuated by Senate Bill 567. (See former § 1170, subd. (b); Stats. 2007, ch. 3, §§ 1-3 (SB 40), eff. Mar. 30, 2007.) Despite this, the record shows that defendant did not raise any objection. As a result, the claim is clearly forfeited.

2. Any Error Based on the Failure To State Reasons Was Harmless

"Where sentencing error involves the failure to state reasons for making a particular sentencing choice, . . . reviewing courts have consistently declined to remand

10

cases where doing so would be an idle act that exalts form over substance because it is not reasonably probable the court would impose a different sentence." (*People v. Coelho* (2001) 89 Cal.App.4th 861, 889; see *People v. Scott*, *supra*, 9 Cal.4th at p. 355 [trial court's error "in identifying or articulating its sentencing choices" does not require reversal where "it is 'not reasonably probable that a more favorable sentence would have been imposed in the absence of error"]; *People v. Jones* (2009) 178 Cal.App.4th 853, 861 [" '[A] reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.' "].)

The appropriate consideration is whether there is "a reasonable possibility that a statement of reasons would have altered the trial judge's conclusion or revealed reversible error[.]" (*People v. May* (1990) 221 Cal.App.3d 836, 839.) On this point, our Supreme Court's decision in *People v. Osband* (1996) 13 Cal.4th 622 (*Osband*) is instructive. In that case, the trial court erroneously stated it was relying upon the same aggravating factor to impose both the upper term and consecutive sentences. (*Id.* at p. 728.) The trial court also failed to state reasons in support of a decision to impose a full consecutive term instead of one-third the middle term on one of the counts. (*Id.* at p. 729.) In concluding that both errors were harmless, our Supreme Court explained that the defendant failed to show a reasonable probability of a more favorable sentence because the record disclosed the trial court "could have selected disparate facts from among those it recited to justify the imposition of both a consecutive sentence and the upper term," and

11

it "could have referred to the aggravating circumstances contained in the California Rules of Court that it found true" if it had been pressed to do so. (*Ibid.*)

The reasoning in *Osband* applies equally to this case. The record shows no shortage of aggravating circumstances referenced by the trial court at the time of sentencing. As the People point out, the trial court's prefatory statement explicitly refers to at least three aggravating circumstances: (1) the crime involves great violence, great bodily harm or the threat of great bodily harm (Cal. Rules of Court, rule 4.421(a)(1); (2) defendant took advantage of a position of trust or confidence to commit the offense (*id.*, rule 4.421(a)(11); and (3) the defendant has previously engaged in violent conduct that indicates a serious danger to society (*id.*, rule 4.421(b)(1)). Defendant concedes that the trial court's prefatory statement can reasonably be interpreted as a reference to each of these factors.

Additionally, moments earlier, the prosecutor brought to the trial court's attention the fact that defendant had an extensive criminal record with "over 20 other convictions," and that defendant was "on probation in at least one case . . . while committing our current charged conduct." In response, the trial court explicitly referenced defendant's "past criminal history" as part of its reason for denying defendant's motion to dismiss prison prior and strike enhancements. Accordingly, the trial court also clearly had before it facts to support three additional aggravating circumstances: (1) defendant's prior convictions as an adult are numerous (Cal. Rules of Court, rule 4.421(b)(2)); (2) defendant has served prior terms in prison (*id.*, rule 4.421(b)(3)); and (3) the defendant was on probation when the crime was committed (*id.*, rule 4.421(b)(4)).

12

Thus, the record in this case clearly shows that there were a sufficient number of aggravating circumstances specifically referenced[2] at the time of sentencing from which the trial court could have selected to support the imposition of an upper term on count 6. As such, the record does not suggest it is reasonably probable defendant would have received a lesser sentence had the trial court actually been pressed to give a statement of reasons and list which of those aggravating factors supported each decision.

C. *Any Error Under the Newly Amended Section 1170 Was Harmless in This Case*

In the alternative, defendant argues that remand is required because the trial court did not rely upon aggravating factors that were found true by a jury, as required under the newly amended section 1170, subdivision (b). However, we conclude that the record in this case also shows any error in this regard was harmless.

1. Test for Harmless Error

Our Supreme Court has unambiguously expressed the view that " '[f]ailure to submit a sentencing factor to the jury, like failure to submit an element [of the crime] to

---

[2] For this reason we are unpersuaded by defendant's reliance on *People v. Cardenas* (2007) 155 Cal.App.4th 1468. In that case, the trial court actually gave a specific statement of reasons for its sentencing choice. (*Id.* at pp. 1479-1480.) It is in this context that the Court of Appeal concluded that it could not rely on a factor that was never referenced by any party or the trial court at the time of sentencing to affirm the sentence. (*Id.* at pp. 1482-1483.) We agree that in cases in which the trial court actually gives its specific reasons for a discretionary sentencing choice, our review should be limited to the reasons actually given by the trial court. However, that is not the situation before us in this case, as the trial court did not explain its reasons and, more importantly, explicitly referred to the aggravating circumstances that could have supported the exercise of its discretion at the time of sentencing.

the jury, is not structural error.' [Citation.] Such an error does not require reversal if the reviewing court determines it was harmless beyond a reasonable doubt, applying the test set forth in *Chapman v. California* (1967) 386 U.S. 18." (*People v. French* (2008) 43 Cal.4th 36, 52-53; *People v. Sandoval* (2007) 41 Cal.4th 825, 838 ["The denial of the right to a jury trial on aggravating circumstances is reviewed under the harmless error standard set forth in [*Chapman*]"]; *People v. Mil* (2012) 53 Cal.4th 400, 410 [same].) Further, our Supreme Court has explained that such failure is harmless under the *Chapman* standard "if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury." (*People v. Sandoval*, at p. 839; *People v. Osband*, *supra*, 13 Cal.4th at p. 728.)

There is no logical reason why this rule of prejudice would not apply here, simply because the requirement to submit a sentencing factor to a jury is now mandated by statute instead of decisional authority. Indeed, at least two published decisions by the Courts of Appeal since the amendments to section 1170, subdivision (b), went into effect have expressly held that the failure to submit the truth of aggravating circumstances to a jury under the statute is governed by this standard. (*People v. Flores*, *supra*, 75 Cal.App.5th at p. 500; *People v. Lopez* (2022) 78 Cal.App.5th 459.)

2. Application

On appeal, the parties dispute whether the aggravating factors to which the trial court appeared to allude in its prefatory statement would be found true beyond a

14

reasonable doubt if submitted to a jury.[3]  However, we do not believe it is necessary to reach this question in order to conclude that at least one aggravating circumstance unquestionably would have been found true in this case.

Even as amended, section 1170, subdivision (b), permits the trial court to consider a defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury.  (§ 1170, subd. (b)(3).) Decisional law at the time of section 1170, subdivision (b)'s amendment recognized that the fact of a defendant's prior conviction was sufficient to establish three circumstances in aggravation without the need for a jury determination:  (1) the defendant had been convicted of prior offenses; (2) the defendant was on probation or parole at the time he committed the current offense; and (3) the defendant served a prior prison term.  (*People v. Towne* (2008) 44 Cal.4th 63, 81-82.)  " '[T]he Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have

---

**3** There are several problems with this approach.  Both before and after this prefatory statement, the trial court explained it was intended as a "bottom line" statement. Thus, the trial court's own words implied it was intended only as a summary and not an exhaustive discussion of facts it considered in making its sentencing decisions.  More importantly, nothing in the record indicates whether the trial court even intended its prefatory statement to refer to its decision to impose an upper term on count 6.  Notably, the statement could have equally referred to its decision to impose consecutive sentences. (*People v. Gutierrez* (1991) 227 Cal.App.3d 1634, 1638 [" 'A decision to impose consecutive sentences is a sentencing choice for which a statement of reasons is required.' "].)  Thus, to engage in the analysis suggested by the parties would first require us to speculate that the trial court's prefatory statement referred to its decision to impose the upper term on count 6, as opposed to other discretionary choices that also required a statement of reasons, and further to speculate that the prefatory statement constituted a comprehensive statement of the trial court's reasons.

15

enacted and amended statutes " 'in the light of such decisions as have a direct bearing upon them.' " ' " (*People v. Licas* (2007) 41 Cal.4th 362, 367.) Thus, we presume that the exception set forth in section 1170, subdivision (b)(3), which permits the trial court to "consider the defendant's prior convictions . . . without submitting the prior convictions to a jury" incorporates this established understanding of which circumstances in aggravation the fact of a prior conviction could be used to establish.

In this case, all three of the circumstances in aggravation that do not require determination by a jury are present. The probation report identified that: defendant had been convicted of over 20 criminal offenses as an adult; a majority of those convictions occurred within five years of the commission of the offenses for which he was convicted in the present case; defendant had served at least four terms in prison within the five years prior to the commission of the offenses for which he was convicted in this case; and defendant had been on probation at the time he committed the offenses in this case. Defendant did not dispute these facts, despite the prosecutor's reliance on them to argue that his original sentence should be increased.

Each of these aggravating circumstances could have been established based upon a certified record of conviction had defendant decided to dispute them, and the trial court would not have been required to submit the truth of these factors to a jury before considering them in support of imposing an upper term sentence. Thus, we need not reach the question of whether a jury, applying a reasonable doubt standard would have found other aggravating circumstances true, in order to conclude that at least one aggravating circumstance would have unquestionably been found true in this case.

16

Defendant contends he was not given the opportunity to contest the evidence in support of any aggravating circumstances or to argue that the prosecution had not met its burden under a reasonable doubt standard. We agree that in many cases, these considerations should be seriously considered before finding the failure to submit an aggravating circumstance to the jury harmless. However, the salience of the opportunity to contest evidence or the higher standard of proof diminishes significantly when the aggravating circumstances at issue are based upon the fact of a prior conviction.

As our Supreme Court has also explained, " '[o]fficial government records clearly describing a prior conviction presumptively establish that the conviction in fact occurred . . . . Some evidence must rebut this presumption before the authenticity, accuracy, or sufficiency of the prior conviction records can be called into question.' " (*People v. Delgado* (2008) 43 Cal.4th 1059, 1066; see *People v. Yim* (2007) 152 Cal.App.4th 366, 371 [Court records pertaining to a prior conviction were sufficient to "demonstrate, as a matter of law, that [the defendant] committed new offenses while on parole," and "[n]o trial court or jury could rationally find otherwise."].) Defendant has not suggested how he could have possibly contested the fact of his prior conviction, prison terms, or the fact he was on parole at the time he committed the current offense.

More importantly, even if we took these matters into consideration, the record suggests there would still be one aggravating circumstance unquestionably found true in this case. Specifically, the fact defendant served four prior prison terms was initially alleged in support of a sentencing enhancement pursuant to the former section 667.5. (*Perez I*, *supra*, E073399.) As such, defendant already had the right to have a jury

17

determine the truth of these facts beyond a reasonable doubt in a bifurcated proceeding. (*People v. Fielder* (2004) 114 Cal.App.4th 1221, 1232; *People v. Tenner* (1993) 6 Cal.4th 559, 566-567.) Because these facts were actually used to enhance defendant's original sentence, defendant also had every incentive to contest a true finding to the extent he could. Defendant has not suggested how this outcome could possibly have been any different under section 1170, subdivision (b). Since the prison prior enhancements were stricken as a result of defendant's first appeal—not based upon the fact that they did not occur, but rather solely based upon a change in the law limiting the application of former section 667.5, subdivision (b), to sexually violent offenses as defined in subdivision (b) of section 6600 of the Welfare and Institutions Code[4]—nothing would have precluded the trial court from relying on this aggravating circumstance in support of imposing an upper term at the time of resentencing had, it been asked to explain its reasons.

Finally, we disagree with defendant's argument that even if at least one aggravating circumstance would unquestionably have been found true, there is still a possibility he could obtain a more favorable outcome on remand because the trial court might still exercise its discretion to decline to deviate upwards in sentencing defendant on count 6. While this consideration could justify remand in many cases (see *People v. Lopez*, *supra*, 78 Cal.App.5th 459.), this is not the situation presented by the facts of this case.

---

[4] See *Perez 1*, *supra*, E073399 for a detailed explanation as to why defendant's prison priors were ordered stricken.

Here, despite failing to specify its reasons for imposing the upper term on count 6, the trial court unambiguously expressed its intent to sentence defendant to the maximum sentence permissible under California law, stating: "I have a lot to say, but I'm going to bottom line this for you . . . . I'm going to sentence you to the maximum amount of time I believe I can sentence you to; okay? . . . [¶] . . . [¶] I do not believe that you are safe out in the public. That is the bottom line." Given this express intent, it is not reasonably probable the trial court would exercise any discretion in favor of leniency on remand. (*People v. Flores* (2020) 9 Cal.5th 371, 432 [Where the trial court explicitly stated it thought defendant deserved "the most severe sentence available under California law—it is clear the trial court would not have exercised its discretion," to reduce defendant's sentence and "remand is not required"]; *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15 [Generally, where "the resentencing court [has] imposed the maximum possible sentence . . ., there is no need to remand the matter to the trial court to exercise its sentencing discretion anew."].)

Because we conclude that at least one aggravating circumstance in support of imposing an upper term sentence on count 6 would have unquestionably been found true, even under the newly enacted provisions of section 1170, subdivision (b), and because the trial court clearly expressed its intent to sentence defendant to the maximum sentence available under the law, any purported error under section 1170, subdivision (b), was not prejudicial and does not warrant remand for resentencing.

D. *Correction of Other Errors*

Finally, defendant contends that the trial court erred in failing to properly recalculate his custody credits at the time of resentencing, and that the abstract of judgment mislabels his five-year enhancement under section 667, subdivision (a), as an enhancement imposed under section 667.5, subdivision (b). The People concede and we agree that both of these errors should be corrected on appeal. Additionally, the People have noted that the trial court failed to properly strike defendant's enhancements imposed pursuant to former section 667.5 as this court previously instructed in *Perez I*, instead purporting to strike only the punishment for these enhancements.

However, remand is not necessary in order to correct these errors. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 342 [appellate court may order enhancements stricken and judgment modified without remand]; *People v. High* (2004) 119 Cal.App.4th 1192, 1200 [appellate court may order corrections to abstract of judgment to address clerical errors].) As such, we will order the judgment modified to correct each of these errors.

## IV. DISPOSITION

The judgment is modified to provide: (1) defendant's five-year sentence enhancement has been imposed pursuant to section 667, subdivision (a), instead of section 667.5, subdivision (b); (2) defendant's enhancements previously imposed pursuant to section 667.5, subdivision (b), are stricken in their entirety; and (3) defendant is entitled to 1,477 days of custody credits, reflecting 1,388 days of actual time served and 89 days of conduct credits. The trial court is directed to prepare an amended abstract

20

of judgment reflecting these modifications and to forward a certified copy to the

Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:

CODRINGTON _____
Acting P. J.

SLOUGH _____
J.